1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8  CARLOS VELEZ,

9              Plaintiff,              No. CIV S-05-0054 FCD PAN

10      vs.

11
   JO ANNE B. BARNHART,
12 Commissioner of Social Security,

13              Defendant.          FINDINGS & RECOMMENDATIONS

14 _____/

15          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

16 Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") under

17 Title II of the Social Security Act ("Act").  For the reasons discussed below, the court

18 recommends plaintiff's motion for summary judgment be denied, the Commissioner's cross-

19 motion for summary judgment be denied, and that this matter be remanded for further

20 development of the record and further findings consistent with this order.

21 I.  Factual and Procedural Background

22          In a decision dated April 27, 2004, the ALJ determined plaintiff was not disabled.[1]

23  _____

24      [1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
   Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
25 to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability
   is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
26 medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &

                                   1

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff had severe impairments of diabetes mellitus, chronic neck pain, degenerative disc disease, carpal tunnel syndrome, asthma, obesity, impaired left ventricular function, organic heart disease with documented prior occlusion of the left anterior descending coronary artery that was treated, bilateral DeQuervain's disease and lateral epicondylitis, and coronary artery disease, but that these impairments did not meet or medically equal a listed impairment; plaintiff's subjective allegations regarding his limitations were not totally credible; plaintiff had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; walk, stand, and sit for six hours in an eight hour workday; occasionally climb and balance, but not on ropes, ladders, or scaffolds; occasionally perform hand manipulations and perform no more than limited keyboarding; plaintiff should avoid repetitive forceful handling, fingering, and feeling; concentrated exposure to vibration,

---

1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

>        Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>        Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>        Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>        Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>        Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  _____

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   pulmonary irritants, and hazards; and more than limited walking on uneven terrain; plaintiff has

2   the residual functional capacity to perform a significant range of light work; there are a

3   significant number of jobs in the national economy that plaintiff could perform, such as technical

4   support specialist, teacher's aid, and computer salesperson; and plaintiff is not disabled.

5   Administrative Transcript ("AT") 33-34.  Plaintiff contends that the ALJ erred in determining

6   that plaintiff's combined medical impairments did not equal a listed impairment; the ALJ failed

7   to accord the appropriate weight to the opinion of plaintiff's treating physician; the ALJ erred in

8   rejecting the opinion of the medical expert; the ALJ erred in finding plaintiff to be not entirely

9   credible; and the ALJ erred in his determination of plaintiff's residual functional capacity.

10   II.  Standard of Review

11          The court reviews the Commissioner's decision to determine whether (1) it is

12   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

13   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

14   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

15   Substantial evidence means more than a mere scintilla of evidence, but less than a

16   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

17   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

18   reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

19   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

20   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

21   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

22   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

23   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

24   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

25   substantial evidence supports the administrative findings, or if there is conflicting evidence

26   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

3

1   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

2   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

3   1335, 1338 (9th Cir. 1988).

4   III.   Analysis

5           a.   The ALJ Improperly Rejected the Medical Expert's Opinion that Plaintiff's Cardiac

6           Condition Met or Equaled a Listed Impairment.[2]

7                   At the hearing, the ALJ took evidence from a non-treating, non-examining

8   medical expert (ME).   During his testimony, this expert, Dr. Dhaliwal, explained the medical

9   record, offered an opinion that plaintiff met two of the statutory criteria for disability, and

10   provided a functional assessment of plaintiff capabilities in light of his limitations.   While the

11   ALJ gave proper reasons for rejecting some of the ME's conclusions, he erred when he rejected

12   Dr. Dhaliwal's opinion that plaintiff met the regulatory criteria for cardiac disability.

13                   The ALJ summoned the ME to testify at the hearing.   AT 129.   The expert's place

14   at the hearing does not entitle him to preferred status when evaluating medical opinions.   See

15   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)(applying the

16   standard method of weighing medical evidence for all medical opinions, including those offered

17   by non-treating, non-examining physicians who testify at the hearing).   As with other non-

18   examining physicians, the refusal by the ALJ to give full credit to the testifying ME's opinion

19   must be supported by substantial evidence in the record.

20                   After reviewing the entire medical record, Dr. Dhaliwal testified that plaintiff met

21   the statutory requirements for disability under Social Security Regulations "Listing of

22   Impairments" ("Listings") 1.04A (Spinal Impairment) and 4.02B (Cardiac).   The Listings are

23   comprised of impairments to fourteen categories of body systems that are severe enough to

24   preclude a person from performing gainful activity.   Young v. Sullivan, 911 F.2d 180, 183-84

25   ─────────────────

26           [2]Due to the nature of its findings, the court is addressing the arguments in a different
    order than plaintiff briefed them.

1   (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so

2   severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or

3   equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d

4   1545, 1550 (9th Cir. 1985).

5        With regards to plaintiff's spinal impairment, the listings require a number of

6   elements.  A spinal impairment meets or equals Listing 1.04A if the impairment compromises the

7   nerve root or the spinal cord and manifests symptoms of "nerve root compression characterized

8   by neuroanatomic distribution of pain, limitation of motion of the spine, and motor loss (atrophy

9   with associated muscle weakness or muscle weakness)."  20 C.F.R. § 404, Part 404, Subpart P,

10  Appendix 1, Listing 1.04.  In spite of his testimony that plaintiff met the listing, Dr. Dhaliwal

11  specifically stated that there was no motor loss atrophy.  AT 575.  Given this deficiency, the

12  ALJ's rejection of the ME's opinion for this listing was not in error.

13       The ME's inability to identify all of the requirements contained in Listing 1.04A

14  was a sufficient basis upon which to conclude that plaintiff's spinal impairments did not meet the

15  statutory requirements for disability.  However, the ALJ erred in his summary rejection of the

16  ME's opinion that plaintiff met the cardiac listing.  In disagreeing with the ME that plaintiff met

17  Listing 4.02B, the ALJ provided no reasons supported by substantial evidence in the record;

18  rather, he simply restated the requirements of the listing without giving any analysis or

19  application of the evidence to the regulation.  In addition, the ALJ incorrectly stated the evidence

20  as it concerned the ME's testimony.  As a result, this case should be remanded back to the ALJ

21  for further proceedings in order to permit a proper evaluation of the ME's testimony and the

22  medical evidence.

23       Dr. Dhaliwal concluded that plaintiff suffered from a cardiac condition that met

24  the requirements of Listing 4.02B.  AT 579.  Listing 4.02B requires the following:

25      B. Documented cardiac enlargement by appropriate imaging
        techniques (see 4.02A) or ventricular dysfunction manifested by

26      S3, abnormal wall motion, or left ventricular ejection fraction of 30

1    percent or less by appropriate imaging techniques; and

2    1.  Inability to perform on an exercise test at a workload equivalent
     to 5 METs or less due to symptoms of chronic heart failure, or, in
3    rare instances, a need to stop exercise testing at less than this level
     of work because of:
4
         a. Three or more consecutive ventricular premature beats or three
5    or more multiform beats; or

6        b. Failure to increase systolic blood pressure by 10 mmHg, or
     decrease in systolic pressure below the usual resting level (see 4.00C2b);
7    or

8        c. Signs attributable to inadequate cerebral perfusion, such as
     ataxic gait or mental confusion, and
9
     2.  Resulting in marked limitation of physical activity, as
10   demonstrated by fatigue, palpitation, dyspnea, or anginal
     discomfort on ordinary physical activity, even though the
11   individual is comfortable at rest.

12   20 C.F.R. § 404, Part 404, Subpart P, Appendix 1, Listing 4.02B.  In his testimony, Dr.

13   Dhaliwal's addressed all of these requirements.

14          Dr. Dhaliwal noted that plaintiff's ejection fraction was 30 to 35 percent, a value

15   which could meet the listing requirement of an "ejection fraction of 30 percent or less."  Listing

16   4.02B.  Furthermore, Dr. Dhaliwal noted that plaintiff was unable complete a cardiovascular

17   exercise test because of dizziness.  AT 579.  In addition, Dr. Dhaliwal found plaintiff to suffer

18   from a marked limitation of activity because of palpitation.  AT 579.

19          In opining that plaintiff met this listing, Dr. Dhaliwal stated that plaintiff's

20   ejection fraction was "30 to 35 percent."  AT 579.  While possible that plaintiff's ejection

21   fraction is higher than 30 percent and therefore outside the bounds of the listing, it is also

22   possible that the ejection fraction is exactly 30 percent.  The ALJ engages in a dialogue with Dr.

23   Dhaliwal during the hearing in which he questions whether 30 to 35 percent is within the listing,

24   AT 579-80; however, he fails to provide any discussion in his findings to demonstrate that

25   plaintiff's ejection fraction is in fact higher than 30 percent.

26   /////

1        This is not an instance where deference to the findings of the ALJ is required

2 because more than one rational inference can be drawn.  <u>Morgan</u>, 169 F.3d at 599.  The only

3 inference to be drawn is that the ejection fraction could be any amount between 30 and 35

4 percent.  When evidence is not definite, the ALJ has a responsibility to consult with a ME in

5 order to assist in making a proper determination.  <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 848 (9th

6 Cir. 1991); SSR 83-20.  The medical expert in this case provided an expert opinion that 30 to 35

7 percent was within Listing 4.02B.  AT 580.  In his findings, the ALJ provided no reason to

8 dispute that opinion.  The ALJ's failure to explain his conclusion that the number was greater

9 than 30, and therefore outside the limits of Listing 4.02B, was not proper.

10        In addition, Dr. Dhaliwal stated that plaintiff stopped the exercise test after "two

11 minutes" because of dizziness.  AT 579.  In interpreting the test results provided by the

12 examining cardiologist, Dr. Dhaliwal testified:

13        It said dizziness.  You know, but dizziness – if you read number
       three, [inaudible] you know, I don't doubt it because his pressure

14        was 190 systolic which doesn't happen.  So then if you read one
       and then you read two [inaudible] limitation demonstrated by

15        fatigue, palpitation, [inaudible] and, you know, he complained of
       dizziness.  I don't know but, you know, I think with 30 percent

16        ejection fraction he meets the listing.

17 AT 579.

18        While Dr. Dhaliwal's testimony is confusing at time, due in equal parts to his

19 inability to succinctly and audibly answer the questions, as well as plaintiff's attorney's and the

20 ALJ's frequent interruptions, it is clear that he makes the requisite findings.  His statements

21 regarding "one" and "two" must clearly be read as references to paragraphs one and two in

22 Listing 4.02B.  His reference to "number three," given that it immediately followed his comment

23 about plaintiff's dizziness, a type of mental confusion, can fairly be read as a reference to

24 subparagraph C, the third subparagraph under paragraph one.  However inarticulate it may have

25 been, Dr. Dhaliwal identified plaintiff's ejection fraction, his inability to complete the test due to

26 /////

1  mental confusion, and his palpitation.  Despite the ALJ's statement to the contrary, Dr. Dhaliwal

2  met each of the elements of Listing 4.02B.

3          While the cardiac evaluation from examining cardiologist Dr. Breen showed

4  plaintiff to be clinically stable, AT 464, the ALJ did not utilize this as a basis for his rejection of

5  the ME's opinion.  In fact, the ALJ simply restated the language of Listing 4.02B, providing no

6  reasoning for his dismissal of Dr. Dhaliwal's opinion.  See Lewis v. Apfel, 236 F.3d 503, 512

7  (9th Cir. 2001)("An ALJ must evaluate the relevant evidence before concluding that a claimant's

8  impairments do not meet or equal a listed impairment."); see also Marcia v. Sullivan, 900 F.2d

9  172, 176 (9th Cir. 1990)(holding that the ALJ must adequately explain a finding that plaintiff did

10  not equal a listing). Remand is recommended in order to permit the ALJ to reconsider the

11  medical testimony and perform a proper evaluation of the ME's opinion based upon the evidence

12  in the record.  Depending upon the outcome of that evaluation, disability may be found or

13  continuation of the sequential analysis may be required.

14          In addition to rejecting the ME's opinion that plaintiff met two of the listings, the

15  ALJ gave minimal weight to the functional assessment offered by the ME.  Dr. Dhaliwal found

16  that plaintiff was able to lift 15 pounds occasionally and 10 pounds frequently, could stand less

17  than one hour in an eight hour workday, could sit for two to three hours in an eight hour

18  workday, and could walk for only 15 to 20 minutes at a time.  The ALJ's rejection of this

19  functional capacity assessment was not in error.

20          In rejecting Dr. Dhaliwal's opinion, the ALJ noted that it was inconsistent with

21  numerous medical opinions in the record.  These opinions included those offered by the non-

22  examining physicians at the State Agency, as well as those of the examining physicians, Dr.

23  Wyrtzes, Dr. Breen, and Dr. Jordan.  AT 31.  Given the contrary medical evidence in the record,

24  the ALJ conducted a proper evaluation, giving the non-examining, non-treating opinion of Dr.

25  Dhaliwal the weight permitted under the law.  Waters v. Gardner, 452 F.2d 855, 858 n. 7 (9th

26  Cir. 1971) ("resolution[s] of conflicts in the testimony are solely the functions of the Secretary").

1       The misinterpretation of Dr. Dhaliwal's testimony as it concerns plaintiff's

2   cardiac problems in no way undermines the ALJ's evaluation of Dr. Dhaliwal's opinion

3   regarding plaintiff's residual functional capacity.  Dr. Dhaliwal reached his conclusion of

4   plaintiff's functional capacity based, in part, upon his opinion that plaintiff met Listing 4.02B.

5   However, this opinion is only one component of Dr. Dhaliwal's overall assessment of plaintiff's

6   abilities.  As it concerns plaintiff's overall abilities, the ALJ provides ample bases to support his

7   belief that Dr. Dhaliwal's residual functional capacity assessment should not be credited.

8       Doctors from the State Agency evaluated all of the medical evidence to reach a

9   functional assessment less restrictive than Dr. Dhaliwal's.  This evidence included an MRI image

10  of plaintiff's spine taken on March 25, 2000, that showed bulging discs and spinal cord

11  impingement.  AT 292.  Examining physician Dr. Wyrtzes found plaintiff capable of vocational

12  rehabilitation.  AT 459.  Examining cardiologist Dr. Breen determined that plaintiff was

13  clinically stable.  AT 463-64.

14      Dr. Jordan, while apparently not having reviewed the March 2000 MRI,

15  conducted a thorough neurological examination to similarly conclude that plaintiff possessed the

16  ability to operate at a relatively high level of functioning.  AT 357-58.  Despite her failure to

17  review the MRI, her opinion remains reliable and provides substantial evidence to support the

18  ALJ's conclusion.  Given the nature and extent of her examination, it is not apparent how

19  information from the MRI image would have changed her opinion.  Dr. Jordan's conclusions

20  were based on the objective findings that came from her examination of plaintiff; objective

21  measurements of plaintiff's condition, strength, flexibility, senses, reflexes, coordination, and

22  mobility unaffected by a radiologic image of plaintiff's vertebrae.  AT 355-57.

23      In addition, the ALJ's reliance on the examining physicians' opinions over the

24  opinion of Dr. Dhaliwal is further supported by the fact that Dr. Dhaliwal relied upon those same

25  doctors findings in order to reach his conclusion.  AT 565-66.  Dr. Dhaliwal conducted no

26  examination of plaintiff and made no objective findings as they concerned any of plaintiff's

9

1  conditions.  While such non-examining physician's opinions can be valuable in determining

2  disability, rejection of them in favor of hands-on evaluations by examining doctors is not in error.

3  See Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).

4       The ALJ evaluated multiple opinions offered by the ME.  While his findings were

5  correct in several aspects, the ALJ erred in his evaluation of Dr. Dhaliwal's opinion that plaintiff

6  met the listing for cardiac disability.  Remand is recommended in order to permit the ALJ to

7  properly further evaluate the evidence and make findings supported by the facts in the record.

8       b.  The ALJ Erred in his Finding that Plaintiff's Cardiac Impairment did not Meet or

9       Equal a Listed Impairment.

10      The ALJ found that plaintiff did not meet or medically equal any listed

11  impairment.  AT 26-27.  Given the improper rejection of Dr. Dhaliwal's opinion that plaintiff

12  met Listing 4.02B, this finding by the ALJ is not supported by substantial evidence.  Remand is

13  necessary to permit the ALJ to evaluate whether or not plaintiff meets the listing for cardiac

14  impairment in light of his findings as they concern Dr. Dhaliwal's testimony.

15      Indeed, with regards to plaintiff's cardiac condition, the ALJ fails to apply any of

16  the available medical evidence to Listing 4.02B.  The ALJ did state that the evidence was devoid

17  of any clinical or diagnostic findings to support a disability under Listing 4.01.  AT 26.

18  However, other than a simple restatement of the findings of examining cardiologist Dr. Breen,

19  AT 24, and a near verbatim recitation of the regulatory language of the listing, AT 27, the ALJ

20  provides no explanation or analysis based upon substantial evidence in the record to support any

21  conclusion that plaintiff did not meet Listing 4.02B.  See Lewis, 236 F.3d at 512 ("An ALJ must

22  evaluate the relevant evidence before concluding that a claimant's impairments do not meet or

23  equal a listed impairment."); see also Marcia, 900 F.2d at 176 (holding that the ALJ must

24  adequately explain a finding that plaintiff did not equal a listing).  Remand is recommended in

25  order to permit the ALJ to adequately evaluate the entire medical record and reach appropriate

26  /////

10

1   findings regarding plaintiff's cardiac impairment that are supported by substantial evidence in the

2   record.

3   　　　　　In spite of the problems in evaluating Listing 4.02B, the ALJ's conclusion that

4   plaintiff did not meet or equal the listing for spinal impairment (Listing 1.04A) was not in error.

5   The ALJ must consider the combined effects of plaintiff's mental and physical impairments in

6   determining whether an impairment meets or equals a listed impairment.  Lester v. Chater, 81

7   F.3d 821, 828 (9th Cir. 1996).  Even if a plaintiff does not meet a listed requirement, the

8   combined effects of plaintiff's ailments may equal a listed impairment.  20 C.F.R. § 404.1526(a).

9   In determining equality, the commissioner must consider whether the "symptoms, signs, and

10  laboratory findings are at least equal in severity to the listed criteria."  20 C.F.R. §

11  404.1529(d)(3).

12  　　　　　As noted above, the ALJ properly rejected Dr. Dhaliwal's opinion as it concerned

13  plaintiff's spinal impairment.  However, in addition to the ME, plaintiff's treating physician also

14  found plaintiff met all of the requirements for listing 1.04A.  Unlike Dr. Dhaliwal, Dr. Daniel

15  stated explicitly that plaintiff suffered from motor and sensory loss in his upper extremities.  AT

16  532.  However, Dr. Daniel noted that this loss was the result of both plaintiff's spinal injuries and

17  his carpal tunnel.  Id.

18  　　　　　Despite the treating physician's conclusion, the evidence in the record does not

19  support a finding that plaintiff's motor loss is met through either a spinal impairment or equaled

20  as a result of carpal tunnel syndrome or any other impairment.  As noted below, the ALJ properly

21  discounted Dr. Daniel's opinion.  The remaining medical evidence that the ALJ evaluated fails to

22  support any conclusion that plaintiff's injuries meet or equal Listing 1.04A.  Marcia, 900 F.2d at

23  176.

24  　　　　　No other physician concluded that plaintiff's spinal impairment, carpal tunnel, or

25  any other injury was severe enough to meet or equal the criteria for Listing 1.04A.  Dr. Fujikawa

26  diagnosed tendinitis during the only visit where plaintiff complained to him of pain in the arms

and hands, AT 233; however, he fails to document any additional problems.  No other doctor at Med Clinic reports any complaints of upper extremity impairment.  Dr. Jordan found plaintiff suffered from carpal tunnel and neck pain, but that it only limited him to occasional activities. AT 357.   Doctors from the State Agency found plaintiff retained full motor strength.  AT 334.

The ALJ's finding that plaintiff's spinal impairment did not meet Listing 1.04A was proper.  However, the ALJ's conclusion that plaintiff's cardiac problems did not meet Listing 4.02B was in error.  As a result of the ALJ's improper evaluation of the ME's testimony and his failure to analyze the entire record as it applied to Listing 4.02B , remand is recommended.

c.  <u>The ALJ properly weighed the medical opinions in this case.</u>

The ALJ gave minimal weight to the functional assessment of plaintiff's treating physician, Dr. Daniel.[3]  AT 25.  In reaching this finding, the ALJ noted the inconsistency between Dr. Daniel's objective medical findings and his functional assessment.  <u>Id.</u>  In addition, the ALJ found numerous inconsistencies between Dr. Daniel's opinion and the other medical opinions in the record.  <u>Id.</u>  The ALJ's weighing of the medical evidence was supported by substantial evidence in the record and should not be disturbed.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  <u>Id.</u>;  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

_____

[3]The ALJ mistakenly referred to Dr. Wiggins when discussing the weight to be given to Dr. Daniel's opinion.  This error was harmless.  <u>See</u>  <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases).  The ALJ's placement of his discussion of reasons for weighing Dr. Daniel's opinion as he did, immediately following the analysis of Dr. Daniel's functional assessment, as well as the fact that the ALJ properly referred to Dr. Daniel's treatment notes in that discussion leaves little doubt that the ALJ meant to refer to Dr. Daniel and not Dr. Wiggins.

1   　　　　To evaluate whether an ALJ properly rejected a medical opinion, in addition to

2   considering its source, the court considers whether (1) contradictory opinions are in the record;

3   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

4   treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

5   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

6   rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

7   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

8   examining professional's opinion (supported by different independent clinical findings), the ALJ

9   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

10  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

11  weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172

12  F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

13  rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional,

14  without other evidence, is insufficient to reject the opinion of a treating or examining

15  professional.  Lester, 81 F.3d at 831.

16  　　　　Dr. Daniel opined that plaintiff was disabled as a result of back and upper

17  extremity problems as well as cardiac troubles.  His opinion of plaintiff's functional capacity was

18  that plaintiff was only able to lift and carry five pounds frequently and 10 pounds occasionally;

19  able to stand, walk, and sit for a maximum of 30 minutes at a time, for a total of two hours total

20  in an eight hour workday; with severely restricted postural limitations, and arm and finger

21  movements, as well as numerous environmental restrictions.  AT 530-31.  In his examinations,

22  Dr. Daniel consistently found plaintiff to suffer from numerous ailments, including chronic neck

23  pain, occipital neuralgia, depression, bilateral deQuervain's tenosynovitis, bilateral lateral

24  epicondylitis, repetitive cumulative trauma in the upper extremities, ASHD, and non-insulin

25  dependent diabetes mellitus (NIDDM).  AT 429, 432, 434, 437, 439, 448, 451, 478 - 93.

26  Supporting these conclusions were Dr. Daniel's objective findings that plaintiff experienced

1   muscle tenderness with trigger points and decreased rotation in his para nuchal and trapezius

2   muscles, marked occipital scalp tenderness, positive Finkelstein's bilateral wrists, positive

3   Tinel's and Phalen's signs in both hands, decreased pin pick sensation in the first, second, and

4   third finger, and decreased grip in both hands.  Id.

5          The ALJ found the full extent of Dr. Daniel's functional assessment that plaintiff

6   was unable to perform even sedentary work not supported by clinical evidence in the treatment

7   record.  AT 25.  While objective evidence supports Dr. Daniel's opinion with regards to

8   plaintiff's back and upper extremity, there is no indication in the record that Dr. Daniel had any

9   objective findings upon which to consider plaintiff's cardiac troubles.  Indeed, the treatment

10  notes from Dr. Daniel make no mention of plaintiff's coronary artery disease or status post

11  coronary bypass graft surgery.  See AT 429, 432, 434, 437, 439, 448, 451, 478-93.  For the ALJ

12  to utilize this apparent overreaching by Dr. Daniel as a basis for weighing his opinion is not in

13  error.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th

14  Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

15         In addition, the ALJ noted the contradiction between Dr. Daniel's functional

16  assessment of plaintiff and those offered by other medical experts in the record.  AT 25.  On two

17  occasions, non-examining physicians at the State Agency found plaintiff capable of a

18  significantly higher level of functioning than Dr. Daniel.  AT 291-97, 328-34.  State Agency

19  doctors consistently found plaintiff was able to frequently lift 20 pounds and occasionally lift 10

20  pounds; and that he could stand, walk, and sit for six hours in an eight hour workday.  Doctors

21  disagreed on various aspects of plaintiff's postural and manipulative limitations; however, the

22  most conservative assessments from the State Agency still found plaintiff capable of occasional

23  balancing, AT 330, and unlimited reaching, AT 331.

24         The opinion of a non-treating, non-examining physician alone is not sufficient

25  evidence to upset the conclusions of a treating physician.  Pitzer, 908 F.2d at 506 n. 4.  However,

26  the contradictory opinion from a non-examining physician can support a rejection of the treating

1   physician's opinion when combined with other evidence in the record.  Magallanes, 881 F.2d at

2   751-55.  In this case, numerous medical opinions from plaintiff's other treating and examining

3   physicians provide the substantial evidence necessary to reject any conclusion that plaintiff was

4   disabled.

5           The ALJ found that evidence from plaintiff's treating physician and other doctors

6   affiliated with the Med Clinic failed to document any medical conditions to support a finding of

7   total disability.  The treatment record from the Med Clinic includes examination notes from

8   various doctors, including Dr. Fujikawa, Dr. Liederman, Dr. Runte, and an unnamed

9   ophthalmologist.[4]  In these records, plaintiff consistently complains of various ailments,

10  including diabetes, AT 221, 224, 229, sinus problems, AT 304, a skin rash, AT 305, and foot

11  troubles, AT 307, 309.

12          However, evidence of severe spinal or back pain, numbness in the extremities,

13  carpal tunnel, or cardiac problems is scant in the Med Clinic records.  Plaintiff did report to Dr.

14  Fujikawa on October 5, 1998, that he suffered pain in his thumbs that radiated to his arms.  AT

15  223.  No other notes in the record document any additional complaints.  Furthermore, during an

16  acquaintance visit with Dr. Liederman on March 22, 2000, plaintiff made no complaints about

17  any spinal or back pain, or about carpal tunnel, chest pain or cardiac problems.  AT 314-15.  The

18  only evidence of pain medication contained in the Med Clinic records is a chart note that plaintiff

19  took Naprosyn, an anti-inflammatory used to treat inflammation, swelling, stiffness, and joint

20  pain associated with arthritis.  AT 305.

21          Various examinations by specialists also failed to confirm the opinion of Dr.

22  Daniel.  Dr. Jordan's neurological examination found plaintiff limited by carpal tunnel,

23  peripheral neuropathy, and asthma, but otherwise capable of lifting 25 pounds occasionally and

24

25          [4]The medical records from Dr. Fujikawa come from a Med Clinic office in Carmichael,
    California while the records from Dr. Liederman are from a Med Clinic office in Sacramento,
26  California.

1  10 pounds frequently and walking, standing, and sitting for up to six hours in a eight hour

2  workday.  AT 357-58.  Dr. Wyrtzes found plaintiff capable of vocational rehabilitation in spite of

3  his impairments.  AT 459.  Dr. Breen evaluated plaintiff's cardiac condition and determined that

4  plaintiff was clinically stable, finding no evidence of exercise induced ischemia.  AT 463-64.

5       Numerous medical opinions contradict the conclusions of the treating physician.

6  While no particular finding contradicts the treating physician's opinion in its entirety, each

7  undermines some particular aspect of the broad-ranging and conclusory findings of Dr. Daniel.

8  Non-examining doctors with the State Agency contradicted the extent of plaintiff's impairment.

9  Various examining physicians offered differing opinions in their areas of expertise.  The lack of

10  objective evidence to support Dr. Daniel's conclusions as well as the contrary medical opinions

11  are specific and legitimate reasons to give minimal weight to the treating physician.  The ALJ's

12  weighing of the medical evidence was not in error.

13       d.  <u>The ALJ properly assessed plaintiff's credibility.</u>

14       The ALJ assessed plaintiff's credibility, finding him less than fully credible with

15  regards to a number of his complaints.  Based upon plaintiff's description of his daily activities,

16  as well as the medical evidence in the record, the ALJ found plaintiff's complaints of asthma,

17  diabetes mellitus, mental impairment, sleep problems, pain, and obesity to be slightly or not

18  credible.  AT 28-30.  This finding is not in error.

19       The ALJ determines whether a disability applicant is credible, and the court defers

20  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  <u>See</u>, <u>e.g.</u>,

21  <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

22  an explicit credibility finding.  <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad</u>

23  <u>v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

24  supported by "a specific, cogent reason for the disbelief").

25       In evaluating whether subjective complaints are credible, the ALJ should first

26  consider objective medical evidence and then consider other factors.  <u>Bunnell v. Sullivan</u>, 947

F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

(1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

and effect of symptoms, and inconsistencies between testimony and conduct also may be

relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

the ALJ in determining whether the alleged associated pain is not a significant nonexertional

impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is

malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear

and convincing."  Morgan, 169 F.3d at 599.

The ALJ noted numerous factors undermining plaintiff's credibility.  Plaintiff's

daily activities, which consisted of preparing meals, grocery shopping, doing laundry, daily

walks, watching television, reading the newspaper, driving, interacting with family, and going to

the movies, undermined the legitimacy of plaintiff's complaints.  AT 28.  Furthermore, the ALJ

noted the abundance of medical opinions in the record that contradicted plaintiff's subjective

complaints.  AT 28-30.

Plaintiff's daily activities provide evidence that plaintiff's subjective complaints

were not credible.  The simple fact that plaintiff was able to engage in some daily activities does

1   not compromise his subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594

2   (9th Cir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d

3   597, 603 (9th Cir.1989) (holding that one need not be "utterly incapacitated" in order to be

4   disabled).  However, the ALJ described the numerous activities of plaintiff that are consistent

5   with those necessary for productive work.  See Morgan, 169 F.3d at 600 (finding plaintiff's

6   ability to fix meals, do laundry and yard work, and occasionally care for a friend's child

7   sufficient to undermine complaints of pain).  The ALJ's utilization of this factor to assess

8   plaintiff's credibility was not in error.

9          Furthermore, the medical record failed to support the full extent of many of

10  plaintiff's complaints.  Plaintiff complained of asthma in his initial application.  AT 140.

11  However, plaintiff failed to note during his testimony that he suffered any problems as a result of

12  his asthma, citing his headaches and foot fungal and cracking problems when given the

13  opportunity to describe any additional limitations not previously discussed.  AT 559-60.  The

14  treating physicians at Med Clinic note a history of asthma in their records, AT 244, 314;

15  however, they do not document any treatment or even list asthma treatments among plaintiff's

16  current medications.  See AT 303-305, 309.  Indeed, during his initial interview by Med Clinic

17  doctor, Dr. Liederman, plaintiff stated that "[he never uses his asthma medication and] has had

18  no wheezing, coughing, or other symptoms recently."  AT 314.  The absence of any breathing

19  distress is also noted by Dr. Breen, AT 462, Dr. Jordan, AT 355, and Dr. Hopkins, AT 519.

20         Plaintiff's complaints regarding the severity of his diabetes mellitus were also

21  found by the ALJ to be only slightly credible.  AT 29.  As noted by the ALJ, in spite of plaintiff's

22  complaints that his diabetes was severe enough to cause "swelling" and  "pain, numbness, like

23  fire, like burning" in his hands and feet, AT 547, the medical record fails to support the full

24  extent of these allegations.  AT 28.  Plaintiff's treating physicians felt no need to prescribe

25  insulin for plaintiff's diabetes, AT 221, 303, 478, 547, and the examining physicians consistently

26  note symptoms resulting from diabetes that do not significantly limit plaintiff's ability to

function, AT 357-58, 519.  Furthermore, in spite of his subjective complaints, the examining physicians as well as the State Agency doctors all opined that plaintiff was capable of extended periods of activity on his feet.

There is a similar lack of objective medical evidence supporting the full extent of plaintiff's complaints of mental impairment.  While plaintiff complained of "longstanding" mental issues, AT 557, psychiatric evaluations failed to document conditions as severe as those presented by plaintiff.  Plaintiff told his treating doctors that his mental impairments are "well-controlled."  AT 314.  Examining psychiatrist Dr. Greenleaf found plaintiff fully capable on multiple levels.  AT 274.  Examining psychologist Dr. Ardalan was similarly optimistic in his assessment.  AT 325.  The State Agency found no severe impairments.  AT 336.

The ALJ also found plaintiff's complaints of sleep apnea to be not credible.  AT 30.  Despite the need for a continuous positive airway pressure (CPAP) machine, AT 401, 558, plaintiff failed to make any significant complaints to his doctors concerning sleep problems.  Furthermore, none of those doctors noted any signs of sleep deprivation consistent with sleep problems.

Finally, the ALJ found plaintiff's complaints of pain and obesity partially credible.  AT 31.  Plaintiff consistently responded in the negative when asked if he takes part in any daily activity that requires any sort of ambulation or effort.  AT 540-45.  As with the other impairment found less than fully credible, the ALJ noted the lack of objective medical evidence to support these complaints of nearly complete enfeeblement.  AT 30-31.  Plaintiff's treating physicians at Med Clinic failed to document evidence of severe pain limiting plaintiff, and Dr. Daniel provides inconsistent evidence of increasing and decreasing periods of pain, AT 483-93.  Plaintiff's assessment during his twice monthly chiropractic adjustment was that his pain was "moderate to severe," but never "severe."  AT 377-98.  In spite of his subjective complaints, Dr. Jordan, Dr. Breen, and Dr. Wyrtzes all found that plaintiff's pain and obesity did not preclude him from some functioning.

1        The lack of objective medical evidence to corroborate plaintiff's subjective

2 complaints of pain, in and of itself, is not a proper basis to discredit plaintiff.  <u>See</u> <u>Smolen v.</u>

3 <u>Chater</u>, 80 F.3d 1271, 1285 (9th Cir. 1996).  However, the ALJ is permitted to utilize the

4 ordinary techniques of credibility evaluation, including "other testimony by the plaintiff that

5 appears less than candid."  <u>Id.</u>, <u>see also</u> 20 C.F.R. 404.1529, SSR 96-7p.  Given the extent of

6 plaintiff's other discredited complaints along with the lack of objective findings, the ALJ's

7 conclusion that plaintiff's complaints of pain were not entirely credible is not in error.

8        The medical record consistently fails to document conditions as severe as those

9 put forth by plaintiff.  When combined with plaintiff's activities and the sheer volume of

10 questionable complaints, the ALJ's conclusions as to plaintiff's credibility were not in error.  The

11 ALJ's findings that plaintiff's complaints were less than fully credible was valid and supported

12 by the record.  The ALJ's credibility determination was based on permissible grounds and should

13 not be disturbed.

14       e.  <u>The ALJ did not Properly Determine Plaintiff's Residual Functional Capacity.</u>

15        Social Security Ruling 96-8p sets forth the policy interpretation of the

16 Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional

17 capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R.

18 §§ 404.1545(a), 416.945(a) (2003); <u>see also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir.

19 1985) (residual functional capacity reflects current "physical and mental capabilities").

20        Given the ALJ's erroneous dismissal of the ME's conclusions as they concern

21 plaintiff's cardiac condition, no findings nor any recommendation can be offered about the

22 resulting assessment of plaintiff's residual function.  The sequential analysis permits

23 consideration of residual function by the ALJ only upon a finding that plaintiff does not meet a

24 listing.  The ALJ did not make a proper finding in this regard.  Remand is necessary in order to

25 allow the ALJ to make the necessary findings as they concern plaintiff's cardiac impairment and

26 to halt the inquiry or continue the sequential analysis as appropriate.

1       Accordingly, IT IS HEREBY RECOMMENDED that:

2       1.  Plaintiff's motion for summary judgment be denied;

3       2.  The Commissioner's cross motion for summary judgment be denied; and

4       3.  This matter is remanded under sentence four of 42 U.S.C. § 405(g) for further

5   development of the record and further findings consistent with this order.

6       These findings and recommendations are submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

8   days after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within ten days after service of the objections.  The parties are advised

12  that failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED:  July 20, 2006.

15

16                                                UNITED STATES MAGISTRATE JUDGE

17

18  13

19  Velez.f&r.ss.wpd

20

21

22

23

24

25

26